## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DELIS B. PIERRE (#498929)** | **CIVIL ACTION** |
| **VERSUS** | |
| **SGT. CHRISTOPHER JAMES, ET AL.** | **NO. 14-0748-JJB-RLB** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on June 26, 2015.

                        **RICHARD L. BOURGEOIS, JR.**
                        **UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DELIS B. PIERRE (#498929)** | **CIVIL ACTION** |
| **VERSUS** | |
| **SGT. CHRISTOPHER JAMES, ET AL.** | **NO. 14-0748-JJB-RLB** |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against Sgt. Christopher James, Major Grady Gagnard, Lt. Col. Chad Oubre, Col. Robinson and Ass't Warden Chad Menzina. The plaintiff complains that, after a verbal confrontation between himself and defendant James in April, 2014, defendant James violated the plaintiff's constitutional rights by spreading a rumor among co-inmates that the plaintiff was a "rat" or informant and that the plaintiff had gotten one or more co-inmates "busted" in connection with disciplinary charges. The plaintiff further complains that the remaining defendants failed to respond appropriately when the plaintiff complained regarding defendant James' alleged wrongful conduct.

Pursuant to 28 U.S.C. §§ 1915(e) and 1915A, this Court is authorized to dismiss an action or claim brought by a prisoner against a governmental entity or an officer or employee of a governmental entity if satisfied that the action or claim is frivolous, malicious or fails to state a claim upon which relief may be granted. An action or claim is properly dismissed under these statutes if the claim lacks an arguable basis either in fact or in law. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992), *citing Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hicks v. Garner*, 69 F.3d 22, 24-25 (5th Cir. 1995). A claim is factually frivolous if the alleged facts are "clearly

baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" *Id.* at 32-33. A claim has no arguable basis in law if it is based upon an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998). The law accords judges not only the authority to dismiss a claim which is based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations. *Denton v. Hernandez, supra*, 504 U.S. at 32. A § 1915 dismissal may be made at any time, before or after service of process and before or after an answer is filed. *See Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

In his Complaint, the plaintiff alleges that on or about April 15, 2014, he was involved in a verbal altercation with defendant Christopher James, after which James cursed the plaintiff and threatened to have the plaintiff "locked up." Later that day, the plaintiff learned that defendant James was spreading a rumor among co-inmates that the plaintiff was a "rat" and had gotten one or more inmates "busted" with disciplinary charges. The plaintiff then complained to supervising officials, asserting that defendant James was placing the plaintiff's life in danger from other inmates. In response, a meeting was called the next day, at which defendants Gagnard, Oubre and Robinson were present, and the defendants agreed to remove defendant James from the plaintiff's housing unit and advised the plaintiff that the "problem was handled" and he "need not worry with it anymore." The plaintiff alleges, however, that approximately a week later, on or about April 22, 2014, and on several subsequent dates, defendant James was again assigned to the plaintiff's housing unit. When this occurred on April 22, 2014, the plaintiff complained, and defendant James was allegedly re-located. When this occurred on April 24, 2014, the plaintiff complained, and defendant Menzina responded by merely cursing the plaintiff. When this occurred on April 29, 2014, the plaintiff complained, and defendant

Gagnard responded by asserting that defendant James could not be re-located at that time because there was nobody else available to supervise the housing unit. Later on that same date, defendant Gagnard approached the plaintiff and allegedly inquired why the plaintiff was not taking certain medications prescribed to him. When the plaintiff responded that it was not mandatory for him to take the medications, defendant Gagnard allegedly charged the plaintiff with a falsified disciplinary report, accusing the plaintiff of having cursed defendant Gagnard. This resulted in the plaintiff being placed in administrative segregation. Notwithstanding, the plaintiff was subsequently informed by the defendants that the disciplinary report issued by defendant Gagnard, as well as one issued by defendant James, would be dismissed without adverse consequences. As a result, the plaintiff was admittedly released from administrative segregation approximately two weeks later.

According to the plaintiff, upon being released from administrative segregation, he was again called to a meeting, this one attended by defendants Gagnard, Oubre, Robinson and Menzina, and the defendants assured him that defendant James "would never work around [the plaintiff] again." Notwithstanding, the plaintiff complains that approximately two weeks later, on or about May 27, 2014, defendant James was again assigned to the plaintiff's housing unit. The plaintiff alleges that he complained at that time to defendant Robinson, who responded that, because "the ... problem had been going on too long," Robinson would try to get the plaintiff moved to a different housing unit. Notwithstanding, the plaintiff was apparently subjected to a shake-down search the next day and was found to be in possession of contraband (which the plaintiff does not dispute). As a result, the plaintiff was charged with a disciplinary report that resulted in his being re-assigned to the working cellblocks at LSP.

Approximately two months after the plaintiff was re-assigned to the working cellblocks,

defendant Robinson allegedly visited the plaintiff's cell and requested that the plaintiff withdraw an administrative grievance that the plaintiff had filed in connection with the foregoing events. The plaintiff refused to withdraw the grievance. That same evening, according to the plaintiff, he was instructed to pack his belongings because he was being moved to another cell. When the plaintiff arrived at the new cell assignment, he discovered that he was being placed in a cell "with a big black guy" who allegedly did not want to relinquish the bottom bunk to the plaintiff, notwithstanding the plaintiff's "bottom bunk duty status." The plaintiff then became scared that "security was trying to get [the plaintiff] assaulted," and the plaintiff refused to enter the cell. This resulted in the plaintiff being charged with a disciplinary report and with the plaintiff being thereafter sentenced to punitive segregated confinement at Camp J at LSP. The plaintiff asserts, however, that upon arrival at Camp J, he spoke with Ass't Warden Poret (not named as a defendant herein), who undertook to release the plaintiff from Camp J, after which the plaintiff was re-assigned to a "special dorm[itory]" at LSP, that the plaintiff describes as being designated for inmates with various problems not of their own making.

The plaintiff's allegations fail to state a claim cognizable in this Court. First, the plaintiff makes several assertions that he was verbally abused, cursed and threatened by the defendants on several occasions. Specifically, the plaintiff asserts that defendant James cursed and threatened the plaintiff on or about April 15, 2014 (and thereafter), and that defendant Menzina cursed the plaintiff on or about April 24, 2014, when the plaintiff complained that defendant James was working in the plaintiff's vicinity. Notwithstanding, the law is clear that allegations of threats and verbal abuse alone do not present claims under section 1983. Specifically, the courts have concluded that "mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations." *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.

1983); *Burnette v. Phelps*, 621 F. Supp. 1157, 1162 (M.D. La. 1985); *Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973). Accordingly, the plaintiff's allegations regarding threats and verbal abuse do not rise to the level of a claim of constitutional dimension, and this claim should be dismissed.

Next, the plaintiff complains that the defendants have been deliberately indifferent to a serious threat to the plaintiff's safety, specifically because defendant Christopher James placed the plaintiff's life in danger by spreading rumors that the plaintiff was a "rat" and because the remaining defendants failed to thereafter separate the plaintiff from defendant James for a period of several months. These allegations, however, without more, are not sufficient to establish liability in connection with this claim. Under the Eighth Amendment to the United States Constitution, a prisoner has a constitutional right to be sheltered from threats of harm or violence at the hands of other inmates. *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986); *Jones v. Diamond*, 636 F.2d 1364, 1373 (5th Cir. 1981). Specifically, prison officials "have a duty ... to protect prisoners from violence at the hands of other inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In order for there to be liability in connection with this cause of action, however, there must have existed an intent on the part of security officers to cause the plaintiff harm or at least a conscious or callous indifference to the plaintiff's right to be protected from such harm. *Johnston v. Lucas, supra*, 786 F.2d at 1259. "Deliberate indifference" is the appropriate standard to be applied in this context, and this term has been defined as including an element of "subjective recklessness" as used in the criminal law. *Farmer v. Brennan, supra*, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). The deliberate indifference standard sets a very high bar, and a claim of mere negligence in failing to

protect an inmate from harm is not actionable under § 1983. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). The courts have recognized, however, that the Eighth Amendment duty to protect inmates from harm can be violated when a prison official acts with deliberate indifference by exposing a prisoner to physical assault by labeling him a "snitch" to other inmates. *See Schreane v. Beemon*, 575 Fed. Appx. 486, 492 (5th Cir.), *cert. denied*, __ U.S. __, 135 S.Ct. 762 (2014), *citing Adames v. Perez*, 331 F.3d 508, 515 (5th Cir. 2003).

In the instant case, the plaintiff's claim that the defendants have failed to protect him from harm fails as a matter of law because the plaintiff has failed to allege that he sustained any harm or injury as a result of the defendants' actions. Numerous cases have addressed this issue in this context and have concluded that the dismissal of an inmate's failure-to-protect claim is warranted, even as frivolous, where no harm or injury has in fact occurred as a result of the defendants' actions. *See Walzier v. McMullen*, 333 Fed. Appx. 848, 851 (5th Cir. 2009) (upholding summary judgment in favor of the defendants where there was no proof of harm to the plaintiff from co-inmates and, "[a]bsent a showing that other inmates harmed [the plaintiff], there is no factual basis for a failure to protect claim"); *Castellano v. Treon,* 79 Fed. Appx. 6, 7 (5th Cir. 2003) (upholding the dismissal of an inmate's failure-to-protect claim as frivolous where the plaintiff conceded that "he suffered no actual physical injury resulting from the prison officials' purported failure to protect"); *Wilson v. King*, 2015 WL 1427479, *6 (S.D. Miss. Mar. 27, 2015) (dismissal as frivolous where the inmate plaintiff "admit[ted] that he suffered no physical injury"); *Lilly v. Webb*, 2008 WL 5412374, *4 (E.D. Tex. Dec. 29, 2008) (dismissal after an evidentiary hearing where the inmate plaintiff did not "indicate that he suffered any harm"); *White v. Fox*, 2005 WL 2218142, *6 (E.D. Tex. Sept. 12, 2005) (dismissal after a preliminary evidentiary hearing where the inmate plaintiff "conceded that no harm came to him

as a result [of being labeled a snitch]"), *reversed on other grounds*, 294 Fed. Appx. 955 (5th Cir. 2008). In the instant case, whereas the plaintiff makes a conclusory assertion that co-inmates were "starting to harass" him because of defendant James' actions, the plaintiff alleges no actual injury or harm as a result thereof. Further, the plaintiff acknowledges that the remaining defendants took action to prevent defendant James from working in the plaintiff's vicinity and that the plaintiff was ultimately transferred to a "special dorm[itory]" where defendant James is no longer apparently present. Accordingly, the plaintiff's claim in this regard is without merit and should be dismissed.[1]

The plaintiff also complains regarding the issuance of false or "fabricated" disciplinary charges against him in April, 2014, by defendants James and Gagnard, as a result of which charges he was placed in administrative segregation for a period of approximately two weeks. This claim, however, without more, fails to state a claim of federal constitutional dimension cognizable under 42 U.S.C. § 1983. Specifically, the law is clear that the mere issuance of one or more false disciplinary reports and the imposition of resulting punishment does not alone amount to a constitutional violation. *See Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984). Further, the United States Supreme Court has concluded that the procedures attendant to prison disciplinary proceedings do not implicate any constitutionally protected liberty interest unless the resulting punishment has subjected an inmate to an atypical and significant deprivation

---

1. In addition, the Court notes that the plaintiff would be barred from the recovery of compensatory damages in this case in any event by reason of 42 U.S.C. § 1997e(e). Pursuant to this statute, a prisoner plaintiff is prohibited from recovering compensatory damages for mental or emotional injury in the absence of some showing of physical injury. The plaintiff has not sufficiently alleged that he has sustained any physical injury as a result of the defendants' purported wrongdoing. Whereas the plaintiff might still be able to recover nominal or punitive damages, he would be required to make a showing that the defendants intentionally violated his constitutional rights. *See Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007).

(evaluated in the context of prison life) in which the state might conceivably have created a liberty interest for the benefit of the inmate. *Sandin v. Conner*, 515 U.S. 472, 486 (1995). In *Sandin*, the Court concluded that a disciplinary sentence of a housing change to segregated confinement was not so atypical as to give rise to a claim of the violation of procedural due process. *Id.* This Court similarly concludes that the alleged disciplinary action in this case, of placement in segregated confinement for a two-week period commencing in April, 2014, did not result in such an atypical and significant deprivation as to support a due process claim. *See Dickerson v. Cain*, 241 Fed. Appx. 193, 194 (5th Cir. 2007) (finding that placement in segregated confinement at LSP was not an "atypical or significant hardship"). Thus, the plaintiff may not be heard to complain regarding the alleged false disciplinary charges issued against him by the defendants.

The Court further notes in connection with the foregoing that the plaintiff also alleges that he was issued a disciplinary charge for "contraband" in May, 2014, and a disciplinary charge approximately two months later for refusing to obey orders to move into an assigned cell with a co-inmate. The plaintiff does not allege, however, that these charges were false or fabricated. To the contrary, the plaintiff concedes in connection with the former charge that he was "found to have minor contraband items in [his] possession," and he concedes in connection with the latter that he admittedly "refused to go in that cell." Thus, the plaintiff is unable to make a claim regarding any asserted falsity relative to these disciplinary charges because he effectively concedes that the charges were validly issued.

Finally, to the extent that the plaintiff's allegations may be interpreted as suggesting that the actions of the defendants may have been undertaken with retaliatory animus, the Court concludes that this claim also must fail. In this regard, the taking of action against an inmate in

retaliation for the inmate's exercise of his constitutional rights may itself amount to a violation of the inmate's constitutional rights. *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). Claims of retaliation by prison inmates, however, are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that occurs within a penal institution. *Id.* at 1166. Accordingly, to prevail on a claim of retaliation, a prisoner must be able to establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant(s) intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis*, was undertaken against the prisoner by the defendant, and (4) that there is causation, *i.e.*, that but for the retaliatory motive, the adverse action would not have occurred. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). If an inmate is unable to point to the exercise of a specific constitutional right, his claim will fail as a matter of law. *See Tighe v. Wall*, 100 F.3d 41 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the exercise of a specific constitutional right); *Woods v. Smith, supra*, 60 F.3d at 1166 (observing that, "[t]o state a claim of retaliation an inmate must allege the violation of a specific constitutional right"). Further, the inmate must allege more than a mere personal belief that he is a victim of retaliation. *Jones v. Greninger, supra,* 188 F.3d at 325; *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Finally, to demonstrate the requisite retaliatory intent on the part of a defendant, the inmate must produce direct evidence of retaliatory motivation or allege a chronology of events from which retaliation may plausibly by inferred. *Woods v. Smith, supra,* 60 F.3d at 1166.

In the instant case, the plaintiff's claim of retaliation fails as a matter of law. First, with regard to the alleged conduct of defendant James in labeling the plaintiff a "rat," in cursing and

threatening the plaintiff, and in issuing the plaintiff an alleged false disciplinary report, the plaintiff asserts that this conduct was undertaken in response to a mere "verbal altercation" between the plaintiff and defendant James.  This assertion does not identify the exercise of any specific constitutional right by the plaintiff, the exercise of which caused the defendant to take action against the plaintiff.  Similarly, with regard to the alleged fabricated disciplinary report issued by defendant Gagnard on or about April 29, 2014, the plaintiff asserts only that this report was issued after defendant Gagnard questioned the plaintiff regarding the plaintiff's admitted failure to take prescribed medication.  This assertion also does not clearly implicate the exercise of any specific constitutional right.  Further, and in any event, the plaintiff acknowledges in connection with these two disciplinary charges that they were thereafter dismissed without a hearing and without punishment and that he was released from administrative segregation after approximately two weeks, suggesting that any adverse impact from these charges was *de minimis* at best.

Next, with regard to the disciplinary charge of "contraband" issued on or about May 28, 2014, the plaintiff's claim of retaliation fails because he does not assert that he did *not* have contraband in his possession when he was searched on the referenced date.  Thus, he is unable to show causation in connection with a claim of retaliation associated with this charge, *i.e.,* show that but for a supposed retaliatory motive, the disciplinary charge would not have been issued.  Further, the plaintiff's allegations relative to this disciplinary charge do not support an inference of retaliatory motive in any event or provide a chronology of events from which retaliation may plausibly be inferred.  Specifically, the plaintiff does not identify who issued the disciplinary report, and he alleges only that the report was issued a day after he asked defendant Robinson about a transfer to another housing assignment, to which request defendant Robinson allegedly

responded favorably, advising the plaintiff that the defendant "would see about moving [the plaintiff]." Thus, the plaintiff provides no suggestion of retaliatory motivation in connection with the subsequent search and disciplinary charge, thereby providing the Court with only the plaintiff's personal belief, if even that, that the disciplinary charge was retaliatory in nature.

Finally, a closer question is presented in connection with the incident that allegedly occurred in July or August, 2014, when the plaintiff refused a request by defendant Robinson to withdraw an administrative grievance that the plaintiff had filed. Specifically, inasmuch as the plaintiff had a First Amendment constitutional right to seek redress of grievances and thus to complain about the wrongdoing of security officers, defendant Robinson was not authorized to retaliate against the plaintiff for exercising that right and for refusing to withdraw the administrative grievance. Notwithstanding, the Court concludes that this claim as well must fail for several reasons. First, although there is a temporal chronological connection between the plaintiff's refusal to withdraw the grievance and the subsequent transfer to another cell that same evening, the plaintiff provides nothing more than personal conjecture that the transfer was motivated by retaliatory animus or was intended to cause him harm. Specifically, he provides no facts to suggest a retaliatory motive on the part of defendant Robinson, and he acknowledges instead that, upon being escorted to the new cell, he simply "got scared and refused to go in that cell because [he thought] security was trying to get [him] assaulted." There is no suggestion in the record, however, that the plaintiff's fear was justified in this regard. The Court must conclude, therefore, based upon the facts alleged, that the plaintiff cannot show that the transfer and resulting disciplinary report came about because of retaliatory motive on the part of any defendant. Further, inasmuch as the plaintiff admittedly refused to obey direct orders given by security officers to enter the cell to which he had been assigned, the plaintiff again cannot

establish causation in connection with the resulting disciplinary charge, *i.e.,* establish that but for a retaliatory motive, the disciplinary report would not have been issued. Finally, the Court concludes that the plaintiff ultimately suffered no more than a *de minimis* adverse consequence as a result of the referenced disciplinary report. Whereas he may have been transferred to segregated confinement at Camp J as a result of that report, he concedes that he soon thereafter spoke with Assistant Warden Poret, was released from Camp J, and was transferred to a "special" dormitory where he would no longer come into contact with defendant Christopher James. Thus, the plaintiff ultimately obtained the benefit that he was seeking, a permanent separation between himself and defendant James. Based upon these facts, the Court is unable to conclude that the plaintiff's claims of retaliation rise to the level of a constitutional violation, and the plaintiff's Complaint, therefore, should be dismissed.

To the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended that the plaintiff's federal claims be dismissed, the Court further recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over any potential state law claims and that this action be dismissed as legally frivolous and for failure

to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e) and 1915A.[2]

Signed in Baton Rouge, Louisiana, on June 26, 2015.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

2. Note that 28 U.S.C. § 1915(g) provides that, "[i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."